IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03437-NRN

THOMAS LOUIS WYMAN,

    Plaintiff,

v.

LOUIS MILTON WYMAN,

    Defendant.

**ORDER ON DISCOVERY DISPUTE RELATING TO ALLEGED INADVERTENT DISCLOSURE OF PRIVILEGED COMMUNICATIONS**

**N. REID NEUREITER**
**United States Magistrate Judge**

**Background**

This matter comes before the Court on a discovery dispute relating to Defendant's alleged inadvertent disclosure of an alleged attorney-client privileged letter. Following my Practice Standards, the Parties submitted their Joint Statement Regarding Discovery Dispute via e-mail. The Joint Statement is attached to the minutes of the discovery hearing at Dkt. #27-1. The allegedly privileged document was submitted for *in camera* review. *See* Dkt. #28. At my suggestion, the Parties submitted supplemental briefs. The Defendant's supplemental brief and associated exhibits can be found in the record at Dkt. #29, and the Plaintiff's supplemental brief (and one exhibit) can be found in the record at Dkt. #30.

This case arises from a contract dispute between a father and son. Plaintiff Thomas Louis Wyman ("Thomas") is suing his father, Defendant Louis Milton Wyman

("Louis"). Louis was a rancher. Thomas claims that in approximately 1984, he cashed out his college savings CD for $15,000 in order to prevent the repossession of the family's ranching equipment. Louis signed at least two promissory notes promising to repay Thomas with interest. But Louis allegedly never made any payments on the notes to his son. When the ranch was sold for $8 million in approximately 2000 or 2001, Louis used none of those funds to repay his son, despite one note having come due just months prior. It is alleged that, instead of paying the note, Louis said that he would disinherit Thomas unless Thomas agreed to forgive the note. But, if Thomas were to forgive the note, Louis would make Thomas a one-tenth beneficiary of Louis's estate (along with nine other siblings and step-siblings) and also would agree to maintain a $5 million life insurance policy from which Thomas would be able to share equally along with his siblings. It is alleged that Thomas accepted this offer and wrote "Forgiven" on the then-due note. The agreement was not in writing. It is alleged that Louis reneged on this agreement, failed to reinstate Thomas as a beneficiary in his will, and cancelled the $5 million insurance policy. Thomas has sued Louis in contract and quasi-contract (promissory estoppel/unjust enrichment).

This discovery dispute arises out of Louis's disclosure of what is referred to as the "Letter." The Letter is a typed document dated November 11, 2019 from Louis to attorney Thomas Thornberry. Louis claims the Letter is protected by attorney-client privilege. Relying on Fed. R. Evid. 502(b) and Rule 26(b)(5)(B), Louis insists that inclusion of the Letter as part of his initial Fed. R. Civ. P. 26(a)(1) disclosures was inadvertent and does not constitute waiver of privilege. Specifically, Louis argues that the Letter was a communication by him, a client, to his attorney for the purposes of

clarifying his estate plan and "to provide factual information while seeking advice or direction with how to address Plaintiff's threatened claims." Dkt. #29 at 7.

For his part, Thomas Wyman claims the Letter is not protected by attorney-client privilege. And if the Letter is privileged, Thomas agues alternatively that the Letter's disclosure counts as waiver of the privilege. Specifically, Thomas argues the Letter does not seek "counsel, advice, or direction with regard to the client's rights or obligations" or show the sender had an expectation the receiving attorney "does, will, or *might* represent him in the matter at hand." Dkt #30 at 4–6 (citing *Losavio v. Dist. Ct.*, 533 P.2d 32, 35 (Colo. 1975)).

The importance of the Letter cannot be overstated. Thomas is attempting to enforce an oral promise against his father, Louis. Proving the existence of the promise would be made significantly easier if the Letter were received in evidence. While the Letter takes issue with certain of Thomas's claims, in the Letter, Louis does make certain admissions that arguably would be supportive of Thomas's theories of liability. To the extent the Thomas may need to overcome the writing requirement of the Colorado Statute of Frauds, Colo. Rev. Stat. § 38-10-106, the Letter may be of indispensable value.

The exact events which spawned the creation of the Letter are unclear, as the communications to Louis from his counsel directly preceding the Letter are not a part of the record. However, a rough timeline is identifiable from the Parties' submissions.

- On November 29, 2017, Thomas wrote Louis's estate planning attorney, Thomas Thornberry, explaining that he was contemplating filing a complaint for promissory estoppel against his father, but hoped to resolve

3

the issue without resort to litigation. In the November 29, 2017 letter, Thomas recites substantially all the allegations related in the Complaint, including the allegation that Louis and his wife "leverage[d]" Thomas out of the promissory note by offering that he could either have full payment on the Promissory Note (worth approximately $80,000) or a 1/10th future interest in a $5 million insurance policy on his father (worth $500,000), in equal standing with the other children. Thomas sought confirmation as to his status in the will, and also made a proposal to avoid potential litigation. This letter concludes with the request, "Please discuss my pending claims with my Father at your earliest convenience. If I misunderstand your representation of my Father and his wife Paula, please let me know if you are unable or unwilling to make this communication with my Father." Dkt. #29-1.

- On December 7, 2017, Mr. Thornberry wrote Thomas informing him that he had discussed the issues with Louis, and related that Louis had directed Mr. Thornberry to prepare documents amending the Trust to the end that Thomas would be re-included as a beneficiary of both Louis and his wife's Trust and Will. Mr. Thornberry also related that the life insurance policies were cancelled as a result of the non-payment of premium, having become "too expensive to maintain." Mr. Thornberry promised to keep Thomas "in the loop until we get this amendment completed." Dkt. #29-2.

- On October 11, 2019, Attorney Jordan Thomas, Thomas Wyman's attorney, contacted Mr. Thornberry inquiring whether he intended to

represent Louis regarding the alleged oral promises he made in relation to his estate plan. The letter asks that if Mr. Thornberry does not intend to represent Louis, that he so advise. This letter asked for the courtesy of a response by October 23, 2019. Dkt. #29-3.

- It can be presumed that between October 11, 2019 and November 11, 2019, estate attorney Thornberry communicated something to Louis regarding the communication from Thomas's counsel.
- On November 11, 2019, Louis wrote the disputed Letter to Thomas Thornberry to clear up some certain factual issues. Among other things, the Letter expresses Louis's intent to hire separate counsel to handle the dispute with his son, in recognition of the fact that Thomas Thornberry had "retired." The Letter further asks Mr. Thornberry to "relay this information to" counsel for his son. Dkt. #28.
- The day after receipt of the Letter, on November 12, 2019, attorney Emily Osgood of Keller Law, the same law firm where Mr. Thornberry served as "Of Counsel," responded to the October 11 communication from Thomas's attorney. Ms. Osgood states that "Lou has executed estate planning documents in order to re-include his son Thomas at this time." Ms. Osgood also relates that Thomas Thornberry had retired, but, "We do represent Lou[is]." She informs Thomas's attorney that further communication can be directed to her. Dkt. #30-1.

- On Nov. 22, 2019, Thomas's attorney followed up with Ms. Osgood regarding the alleged oral promises. This communication has not been provided by the Parties, but it is referred to in Dkt. #29-4.

- On December 9, 2019, Emily Osgood responded to Thomas's counsel's communication, taking the position that "none of the alleged debts are enforceable" but stating that Thomas has been included as a beneficiary in Louis's estate planning documents to the same extent as all of Louis's other children, and that Louis "has no plans to remove Thomas as a beneficiary." The letter concludes with a Rule 408 offer of settlement. Dkt. #29-4.

- On Apr. 24, 2020, Louis served his initial disclosures under Fed. R. Civ. P. 26(a)(1). These disclosures included the disputed Letter. Dkt. #30 at 1. These initial disclosures were prepared by a paralegal and attorney with the law firm representing Louis. Dkt. #29 at 11.

- On Aug. 28, 2020, four months after serving the disclosures, Louis's counsel purportedly first conducted a thorough review of both the plaintiff and defendant's initial disclosures. At this time Louis's counsel discovered the disclosure of the Letter, and determined it was subject to attorney-client privilege. Dtk. #29 at 12.

- On Sept. 03, 2020, Louis's council contacted Thomas's counsel to explain that the Letter was covered by attorney-client privilege, that its disclosure was inadvertent, and therefore the Letter should be destroyed pursuant to Fed. R. Civ. P. 26(b)(5). Dkt. #29-5.

**Applicability of Attorney-Client Privilege to the Letter**

Turning to the scope of the attorney-client privilege regarding the Letter at issue here, I conclude that the Defendant Louis Wyman has satisfied his burden of proving the attorney-client privilege applies to the Letter.

Federal courts sitting in diversity jurisdiction must apply state substantive law and federal procedural law. *KCOM, Inc. v. Employers Mut. Cas. Co.*, 829 F.3d 1192, 1196 (10th Cir. 2016). "Rule 501 of Federal Rules of Evidence provides that state law supplies the rule of decision of privilege in diversity cases." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).

"The attorney-client privilege applies to 'confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations.'" *People v. Madera*, 112 P.3d 688, 690 (Colo. 2005) (citing *People v. Lesslie*, 24 P.3d 22, 26 (Colo. App. 2000)). The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure. *Losavio*, 533 P.2d at 34. "No blanket privilege for all attorney-client communications exists. [. . .] [I]n deciding whether the privilege attaches, a trial court must examine each communication independently." *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001). The attorney client privilege applies only to communications made "in circumstances giving rise to the reasonable expectation that the statements will be treated as confidential." *Id.* (internal citations omitted); *see also*, *D.A.S. v. People*, 863 P.2d 291, 295 (Colo. 1993) (noting more than a mere showing that a communication was made between a client and

attorney is necessary for the privilege to apply, and there must be circumstances indicating the intention of secrecy).

The party asserting privilege bears the burden of establishing it. *Wesp,* 33 P.3d at 198. In this case, Louis Wyman bears the burden of demonstrating the Letter is protected by the attorney-client privilege. He contends that the Letter is a communication between a client and his attorney, and that the Letter was made in circumstances which give rise to the reasonable expectation of confidentiality. Dkt #29 at 6–8 & 15.

The Letter is comprised of four paragraphs. Paragraphs one through three are a detailed account, by Louis Wyman, of his recollection of events pertinent to Thomas's claims. The fourth paragraph constitutes Louis Wyman's plans for obtaining legal representation in the dispute with his son, and a request of recipient, Thomas Thornberry, to communicate "this information" to Thomas's counsel.

Considering the circumstances of the Letter, including the communications that necessarily immediately preceded and succeeded it, I conclude that this is a communication between a client and his law firm (if not the specific lawyer who would eventually be representing him) regarding a potential legal dispute. If the document had been identified as privileged early on, and reflected on a privilege log, there would be no basis for piercing the veil of privilege here. I agree with Louis's characterization of the Letter's final paragraph as a directive to inform Thomas's counsel of who would be representing Louis going forward, and not a directive to communicate everything in the letter to Thomas's counsel.

I conclude that the Letter was a communication from a client to his lawyer and his law firm which was intended to be confidential. The fact that Mr. Thornberry was retiring or had retired from the active practice of law is beside the point. There is no dispute that he was a licensed attorney at the time of the communication. He delivered the information received from the client to his colleague, who then wrote a responsive letter on behalf of the client. Although Louis has not provided any affidavits either from himself or his attorneys attesting to the privileged and confidential nature of the Letter, I conclude that such affidavits would not be necessary as the supporting documentation and surrounding circumstances, along with the contents of the Letter itself, demonstrate conclusively that it was a communication between a client and his counsel for the purpose of giving or receiving legal advice and was intended to be kept confidential.

**The Inadvertency of the Letter's Disclosure**

"The attorney-client privilege is usually narrowly construed because it inhibits the truth finding process." *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2009 WL 4949959, at *8 (D. Colo. Dec. 14, 2009) (*citing Sedillos v. Bd. of Educ.*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004)). "The confidentiality of communications covered by the privilege 'must be jealously guarded by the holder of the privilege' lest it be waived." *Id.* (citing *In re Qwest, Commc'ns. Intern. Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006). "The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Id.* (citing *United States v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir. 1990) (internal quotations omitted)).

Rule 502(b) deals with whether a disclosure of privileged information constitutes an inadvertent waiver of the attorney-client privilege and work-product protection. The

9

Committee Note reveals the purpose of Rule 502 is to "provide a predictable, uniform set of standards under which parties can determine the consequences of a disclosure of a communication or information covered by the attorney-client privilege." Fed. R. Evid. 502 Adv. Comm. N. (2). Rule 502 provides as follows:

> (b) Inadvertent disclosure. When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
>
> > (1) the disclosure is inadvertent;
> >
> > (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> >
> > (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

F.R.E. 502(b). Further as the advisory committee notes to Rule 502 clarify: cases such as *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985), and *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D. Cal. 1985), set out a multi-factor test for determining whether inadvertent disclosure is a waiver. The stated factors (none of which is dispositive) are the reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure, and the overriding issue of fairness. The rule does not explicitly codify that test, because it is really a set of non-determinative guidelines that vary from case to case. The rule is flexible enough to accommodate any of those listed factors. Other considerations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production.

Rule 502(b) first requires the Court determine if the disclosure of the Letter was inadvertent. Borrowing Judge Tafoya's chosen definition of the word, inadvertent

10

means, "not attentive or observant; heedless; due to oversight; unintentional." *Silverstein*, 2009 WL 4949959, at *10 (citing WEBSTER'S NEW WORLD DICTIONARY (3d College ed. 1988)).

The initial review of Louis's file and materials produced as part of his initial disclosures was conducted by two people from Keller Law, a paralegal and an attorney. The Letter does not contain any typical identifiers of a communication to an attorney. Mr. Thornberry is not addressed by title or occupation, nor does the Letter include an address block with Mr. Thornberry's place of work.

This Court is convinced Defendant's disclosure was sufficiently inadvertent to satisfy the first element of Rule 502(b) analysis. The Letter's lack of typical identifiers which would signal privilege applies to persons conducting document review, may perhaps explain the error. But the Court has no reason to conclude that the production of the Letter was anything other than inadvertent.

Rule 502(b) next requires the Court to determine if the holder of the privilege took reasonable steps to prevent disclosure of privileged information, and finally, if they took prompt and reasonable steps to rectify the error.

The issue of inadvertent disclosure of documents is particularly important in cases involving thousands or hundreds of thousands of documents. *See, e.g., Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008) (district court did not err in finding that defendant's production of privileged documents was inadvertent that privilege nonetheless endured when attorney produced 25,000 documents and there was nothing clearly inadequate about the review process); *In re Natural Gas Commodity Litigation*, 229 F.R.D. 82 (S.D.N.Y. 2005) (holding that where a party produced three

privileged pages in course of producing 65,000 pages of material, it did not thereby waiver work product privilege, where it took reasonable steps including page-by-page reviews of all documents before production).

This is not such a case. Quite to the contrary. It is represented that Defendant's initial disclosures in this case consisted of only ten pages. *See* Dkt. #30 at 9. The Letter is literally the fifth page Defendant produced, with the Bates number "Defendant 00005". The source of the document was the "file for this matter provided by counsel at Keller Law." Dkt. #29 at 11–12. Thus, Defendant's litigation counsel knew that they were reviewing a file of relevant documents provided by Louis Wyman' own wills & estates law firm. Reviewing counsel should have been on high alert that this file could contain privileged communications. The document is clearly signed by Louis M. Wyman. Even a cursory review (especially of the last paragraph) by anyone remotely knowledgeable about the allegations in this case should have raised alarm bells about whether this was a privileged communication sent by the client to his lawyer.

Defendant asserts that given the Letter contains no identifying information about whom Mr. Thornberry worked for, and lacks an "attorney-client privilege" designation, "it was reasonable for individuals conducting a cursory review of Defendant's file from Keller Law for documents that may be relevant as initial disclosures to unintentionally and inadvertently disclose the Letter despite the letter being privileged." Dkt #29 at 11–12. I disagree. When there are only ten pages being produced, there should be something more than a "cursory review" of the documents to determine whether documents are privileged or not.

Other than saying a paralegal and an attorney conducted "review of the Defendant's file and the materials disclosed in Defendant's initial disclosures," Louis Wyman provides no explanation as to how this obviously important and privileged document slipped through. Defendant provides no affidavit from the persons conducting the review, and does not even say what assignment was given to the reviewing personnel or what information they were given about the case for which they were purportedly compiling the initial disclosures. There is no evidence that anyone bothered to read the ten pages being produced.

A modest pursual of these documents would not have significantly added to the cost of the initial disclosure. Additionally, defense counsel's review undertaken months after initial disclosure proves it was possible to determine from the face of the Letter that it was subject to privilege.

In consideration of the above circumstances, the Court finds the defendant did not take reasonable steps to prevent disclosure of the Letter, as Rule 502(b)(2) requires. *See Stewart Title Guar. Co. v. Owlett & Lewis, P.C.*, 297 F.R.D. 232 (M.D. Pa. 2013) (law firm did not take reasonable precautions to prevent inadvertent production where counsel's review of documents before production was "cursory" and production did not involve a large number of documents); *Figueras v. Peurto Rico Elec. Power Authority*, 250 F.R.D. 94 (D.P.R. 2008) (party failed to show it took reasonable precautions to avoid disclosure of privileged documents where it provided no straightforward explanation of the steps it took to ensure that no privileged documents would be produced beyond the perfunctory statement that all documents were reviewed by counsel "to the best of their ability"); *Bensel v. Air Line Pilots Ass'n*, 248 F.R.D. 177

(D.N.J. 2008) (inadvertent disclosure would be deemed a waiver where party failed to provide any facts regarding the initial review and steps taken to avoid disclosure of privileged documents during production by class counsel); *Scott v. Glickman*, 199 F.R.D. 174 (E.D.N.C. 2001) (inadvertent disclosure of a letter from plaintiff to former lawyer waived privilege where letter was in a single box of documents which were subject to attorney review before disclosure, counsel showed lack of precautions, and there were no time constraints preventing more thorough review). As the Court specifically said in *Stuart Title*, "Given the relatively small number of documents produced in this case, counsel for Owlett should have been able to easily identify the documents as privileged had he taken reasonable steps to prevent disclosure of privileged materials." 297 F.R.D. at 241. This reasoning applies equally as well to the instant case.

Defendant Louis has failed to prove he took reasonable steps to prevent disclosure of privileged information. Therefore, as the Defendant has failed to satisfy the second element of F.R.E. 502(b), he is unable to avail himself of its protection.

**Conclusion**

The Court finds that the Letter was an attorney-client privileged document that would, under normal circumstances, be cloaked by the attorney-client privilege. I also find that it was inadvertently disclosed by Defendant's counsel. Fed. R. Evid. 502(b) and Fed. R. Civ. P. 26(b)(5)(B) allow for the claw-back of inadvertently disclosed documents if a party can show, among other things, that reasonable precautions were taken to prevent disclosure of privileged documents. Here, Defendant Louis Wyman has failed to show, by

affidavit or otherwise, that he took reasonable steps to prevent disclosure of privileged documents. Therefore, I find the privilege to have been waived with respect to the Letter.

Date: November 12, 2020  _____
N. Reid Neureiter
United States Magistrate Judge