IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03437-NRN

THOMAS LOUIS WYMAN,

Plaintiff,

v.

LOUIS MILTON WYMAN,

Defendant.

---

**ORDER GRANTING DEFENDANT'S SECOND MOTION TO QUASH SUBPOENA
TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
DIRECTED TO THOMAS THORNBERRY (Dkt. #34)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before me on Defendant Louis Milton Wyman's ("Defendant") Second Motion to Quash Subpoena to Produce Documents, Information, or Objects Directed to Thomas Thornberry. Dkt. #34. I heard argument on the Motion on December 18, 2020. *See* Dkt. #40.

I will assume the readers' familiarity with the background of this case as it was set forth in the November 12, 2020 Order on Discovery Dispute Relating to Alleged Inadvertent Disclosure of Privileged Communications. Dkt. #32. Briefly, this is a contract dispute between Plaintiff Thomas Louis Wyman ("Plaintiff") and his father, the Defendant, over Defendant's alleged failure to revise his estate plan for the benefit of his son in consideration of the son's forgiveness of a promissory note. Thomas

Thornberry was Defendant's estate planning attorney at Keller Law, LLC. Mr. Thornberry provided estate planning legal services to Defendant and his wife.

The disputed subpoena seeks "All documents which relate to Louis Wyman's will, trust(s), or estate plan, including written communications/notes to, from, or about Louis Wyman relating to Louis Milton Wyman's will, trust(s), or estate plan." See Dkt. #34-2. The subpoena does not differentiate between attorney-client privileged documents and non-privileged documents. Plaintiff asserts that the estate planning documents in the possession of Mr. Thornberry or Keller Law

> are relevant in these proceedings because they constitute evidence of the underlying agreement between the parties to this litigation; specifically, that in 2001 the Defendant agreed to devise 1/10 of his estate to the Plaintiff, including 1/10 of a life insurance policy from New York Life with a $5,000,000 death benefit, in exchange for the forgiveness of the Second Note (as defined in the Complaint).

Dkt. #38 at 2.

In his response to the motion to quash, Plaintiff "acknowledges that communications protected by the attorney-client privilege are necessarily within the Subpoena's scope, and does not seek the disclosure of such communications. The dispute in this matter appears to pertain exclusively to which documents are—or are not—privileged." Dkt. #28 at 4–5. Plaintiff's response complained that Defendant had not provided a privilege log distinguishing which statements should be afforded the privilege. Id. at 5. But Defendant's reply attaches a privilege log and it appears that only privileged documents have been so designated. See Dkt. # 37-3. Non-privileged documents from Mr. Thornberry's file already have been produced.

The question before the me, then, is whether the withheld documents relating to Defendant's estate planning documents, including copies of his will and trust and

communications related thereto, are protected by the attorney-client privilege. I find that they are.

Federal courts sitting in diversity jurisdiction must apply state substantive law and federal procedural law. *KCOM, Inc. v. Employers Mut. Cas. Co.*, 829 F.3d 1192, 1196 (10th Cir. 2016). "Rule 501 of Federal Rules of Evidence provides that state law supplies the rule of decision of privilege in diversity cases." *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998).

"The attorney-client privilege applies to 'confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations.'" *People v. Madera*, 112 P.3d 688, 690 (Colo. 2005) (citing *People v. Lesslie*, 24 P.3d 22, 26 (Colo. App. 2000)). The purpose of the attorney-client privilege is to secure the orderly administration of justice by insuring candid and open discussion by the client to the attorney without fear of disclosure. *Losavio*, 533 P.2d at 34. "No blanket privilege for all attorney-client communications exists. [. . .] [I]n deciding whether the privilege attaches, a trial court must examine each communication independently." *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001). The attorney client privilege applies only to communications made "in circumstances giving rise to the reasonable expectation that the statements will be treated as confidential." *Id.* (internal citations omitted). *See also D.A.S. v. People*, 863 P.2d 291, 295 (Colo. 1993) (noting more than a mere showing that a communication was made between a client and attorney is necessary for the privilege to apply, and there must be circumstances indicating the intention of secrecy). Finally, the party asserting privilege bears the burden of establishing it. *Wesp,* 33 P.3d at 198.

3

As an initial matter, I reject Plaintiff's contention that Keller Law, by not responding to the subpoena, waived any objection it might have asserted, at least with respect to the issue before the court; that is, whether the documents sought are privileged. The client, in this case Defendant, is the holder of the attorney-client privilege. *See State Farm Fire & Cas. Co. v. Griggs*, 2018 CO 50, ¶ 16, 419 P.3d 572, 575. "Hence, the privilege may be waived only by the client." *Losavio v. Dist. Court*, 188 Colo. 127, 533 P.2d 32, 35 (1975). Defendant has standing to move to quash the subpoena served upon Keller Law. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) ("[A] party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought[,]" or "upon a showing that there is a privacy interest applicable."). Accordingly, I will move on the merits of Defendant's motion.

"[T]here are few communications that are more confidential than those relating to the preparation, contents and execution of a will when made within the scope of the attorney-client relationship, not in the presence of a stranger and not made to the attorney with the intention that he communicate its contents to someone else." *Will of Johnson*, 488 N.Y.S.2d 355, 357 (N.Y. Sur. Ct. 1985). "The drafting of will, trust, and estate planning documents is an act undertaken by an attorney and client in confidence whereby the client discloses significant details regarding financial holdings and arrangements." *Edwards v. Edwards*, 2019-Ohio-5413, ¶ 14, 151 N.E.3d 6, 10. *See also Krischbaum v. Dillon*, 58 Ohio St. 3d 58, 62–63, 567 N.E.2d 1291, 1296 (1991) ("Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting

4

skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings, which he may not wish to share with his spouse, children and other next of kin."); *In re Guardianship of York*, 723 P.2d 448, 451 (Wash. App. 1986) ("A will, drawn by a lawyer at the direction of a client , contains the very essence of the communications from the client relating to his or her wishes, intentions, and desires with respect to the disposition of their property.").

Thus, "it can hardly be doubted that the execution and especially the contents of wills are impliedly desired by the client to be kept secret during his lifetime, and are accordingly a part of his confidential communication." *Fields v. Dep't of Revenue*, No. TC-MD 040659E, 2005 WL 3108209, at *2 (Or. T.C. Nov. 17, 2005) (alterations omitted) (quoting 8 J. Wigmore, *Evidence* § 2314 (McNaughton rev 1961)). Indeed,

> Courts have on several occasions addressed the issue of disclosure or surrender of a living testator's will to a person other than the testator. Numerous cases have held or recognized, apparently without exception, that where a will has been prepared by an attorney, its contents are protected from disclosure or surrender, at least during the testator's lifetime, by the attorney-client privilege. There appear to be no special rules governing the applicability of the privilege in this context; courts have simply recognized that communications with an attorney concerning a will (and, by extension, the will itself) are as privileged as any other attorney-client communication.

Tim A. Thomas*, Annotation, Involuntary Disclosure or Surrender of Will Prior to Testator's Death,* 75 A.L.R.4th 1144 §§ 2, 3 (1990). In short, "[c]ommunications with an attorney concerning preparation and drafting a will and the will itself, [are] as privileged as any other attorney-client communications." *Compton v. W. Volusia Hosp. Auth.*, 727 So. 2d 379, 382 (Fla. Dist. Ct. App. 1999). *See also Edwards*, 151 N.E.3d at 10 ("The

5

privilege also applies to any communications, such as drafts and discussions relating to that purpose, which are made in confidence by the client.").

This has long been the law in Colorado. In 1905, the Colorado Supreme Court stated, "Undoubtedly, while the testator lives, the attorney drawing his will would not be allowed, without the consent of the testator, to testify to communications made to him concerning it, or to the contents of the will itself[.]" *In re Shapter's Estate*, 35 Colo. 578, 587, 85 P. 688, 691 (1905) (quoting *Doherty v. O'Callaghan*, 157 Mass. 90, 93, 31 N.E. 726, 727 (1892)). Only *after* the testator's death may an attorney testify about client communications relating to the deceased client's will. *See Wesp*, 33 P.3d at 200. The same holds true in other jurisdictions. *See, e.g., Morrow v. Pappas*, 2017 IL App (3d) 160393, ¶ 27, 90 N.E.3d 501, 511 ("Where an attorney prepares a will for a client and witnesses the same, the privilege only exists during the lifetime of the client."); *United States v. Osborn*, 561 F.2d 1334, 1340 (9th Cir. 1977) ("[T]he general rule with respect to confidential communications between attorney and client for the purpose of preparing the client's will is that such communications are privileged during the testator's lifetime and, also, after the testator's death unless sought to be disclosed in litigation between the testator's heirs, legatees, devisees, or other parties, all of whom claim under the deceased client.").

Defendant is alive. Therefore, his communications with Mr. Thornberry concerning the preparation of his will and trust, while perhaps relevant, remain privileged and not discoverable.[1] Defendant's counsel has reviewed Defendant's estate

---

[1] I previously deemed the attorney-client privilege waived as to a November 11, 2019 letter from Defendant to Mr. Thornberry because I found that Defendant failed to show that he took reasonable steps to prevent the inadvertent disclosure of the letter. *See*

planning file retained at Keller Law and provided a privilege log of the contents. The privilege log fairly describes documents within that file considered to be privileged. Defendant represents that any documents not privileged have already been produced or are already in the possession of the Plaintiff. *See* Dkt. #37-3 (Privilege Log for File Received from Keller Law, LLC in Relation to Plaintiff's Second Subpoena to Produce Documents). Plaintiff is entitled to nothing more from Mr. Thornberry or Keller Law.

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Second Motion to Quash Subpoena to Produce Documents, Information, or Objects Directed to Thomas Thornberry (Dkt. #34) is **GRANTED**.

Date: December 23, 2020   _____
N. Reid Neureiter
United States Magistrate Judge

---

Dkt. #32. No such waiver has been demonstrated as to the relevant estate planning documents at issue here.