IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03437-NRN

THOMAS LOUIS WYMAN,

      Plaintiff,

v.

LOUIS MILTON WYMAN,

      Defendant.

---

**ORDER ON
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT
(Dkt. ##48 & 49)**

---

**N. REID NEUREITER
United States Magistrate Judge**

      This matter before me upon the consent of the parties to magistrate judge jurisdiction (Dkt. #13) and the Order of Reference entered by Chief Judge Philip A. Brimmer on March 19, 2020 (Dkt. #14). Now before me are Defendant Louis Milton Wyman ("Louis") and Plaintiff Thomas Louis Wyman's ("Thomas") Motions for Summary Judgment, filed March 19, 2021 (Dkt. ##48 & 49, respectively). I have carefully considered the motions, the responses (Dkt. ##51 & 52), and replies (Dkt. ##53 & 54). I heard oral argument from the parties (see Dkt. #57) and have taken judicial notice of the file. Now being fully informed and for the reasons discussed below, it is hereby ORDERED that the subject motions (Dkt. #48 & 49) are GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Louis Wyman is Thomas Wyman's father. In August 1984, Thomas was working on the family ranch. While Louis and his wife were on vacation, a creditor sought to repossess some ranching equipment. Thomas paid off the balance owed, and when Louis returned, Thomas asked his father to be reimbursed. Louis executed a promissory note dated October 1, 1984, in the amount of $15,850.42, with 10% simple interest (the "1984 Note").

On September 8, 1993, Louis executed another promissory note in favor of Thomas in the amount of $37,374.46 (the "1993 Note"). Thomas contends that the 1993 Note was meant to supersede the 1984 Note. Louis never made any payments on either note.

Louis executed estate planning documents in March 2001. Thomas was the only one of Louis's ten children to be excluded from inheritance. Louis told his son Arthur to inform Thomas that he was being disinherited because of the 1993 Note, but if Thomas forgave the Note, he would share equally in Louis's estate, which could be considerable due to the ranch's value.[2] When Thomas and Arthur spoke, Arthur also stated that Louis was planning on obtaining a $5 million life insurance policy that would name each child as equal beneficiary.

---

[1] The following factual summary is based on the parties' briefs on the motions and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] The family ranch was sold sometime in the early 2000s for about $8 million.

After speaking with Arthur, Thomas reached out to his father. He claims that Louis "strongly suggested" that he would be an equal beneficiary of Louis's estate and flatly stated that Thomas would be beneficiary under the life insurance policy if Thomas forgave the 1993 Note. Thomas says that he agreed to do so because he would then receive a minimum of $500,000 from Louis's estate and life insurance policy. The purported agreement was not reduced to writing.

In June 2001, Louis applied for a life insurance policy with a minimum estimated death benefit of $15,000,000. On July 1, 2001, Thomas wrote "<u>FORGIVEN</u>" on both notes and mailed them to Louis. In the accompanying letter, Thomas wrote:

> Now, I recognize that these pieces of paper are worthless. The statute of limitations on civil matters is seven years and so these are fodder for the trash can. That's not really what makes them worthless though. If you don't feel you owe me this money or the interest then let's forget them. Talk it over with [Louis's wife] Paula. I will accept your charity on this matter on my behalf. I am sorry if this matter has caused you such trouble over the years. I'm writing "forgiven" across these notes along with the date any my signature.

Dkt. #48-8.

Louis and Thomas did not discuss the purported agreement thereafter. It was only in 2017, after Thomas became involved in probate litigation regarding a different estate, that he wrote to his father's attorney to inquire about the status of the life insurance policy and estate planning documents. He then learned for the first time that Louis had allowed the life insurance policy to lapse and did not amend his estate plan to include Thomas.

It turns out that Louis did revise his estate plan in June 2018 to include Thomas as a beneficiary, although Thomas only learned of the revision during the course of this litigation. However, the way things currently stand, Thomas's interest in Louis's estate is

contingent; Louis's wife shall inherit all his property if she survives him.  If Louis's wife

survives Louis, Thomas gets nothing—no life insurance and no part of the estate.

Thomas asserts four claims of relief against Louis: (1) breach of contract (the

1993 Note)[3]; (2) breach of contract (the oral agreement regarding the life insurance

policy); (3) promissory estoppel; and (4) unjust enrichment. Louis filed a counterclaim

for abuse of process.

## LEGAL STANDARDS

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is

to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." An issue is genuine if the evidence is such that a

reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the

outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material

fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)

(citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of

persuasion at trial, the "movant may make its prima facie demonstration [of the absence

of a genuine issue of material fact] simply by pointing out to the court a lack of evidence

---

[3] This claim was dismissed on April 28, 2020 because the 1993 Note was forgiven in
consideration of a new promise, i.e., that Louis would reinstate Thomas to his will and
make him a beneficiary of a life insurance plan. *See* Dkt. #21.

for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works, Inc., v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
>
> . . .
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)–(4).

## ANALYSIS

Thomas seeks (1) partial summary judgment on his second claim for relief for breach of oral contract regarding the forgiveness of the 1993 note in exchange for being named as a beneficiary of Louis's will and life insurance policy; (2) summary judgment on his equitable claims of unjust enrichment and promissory estoppel; and (3) summary judgment on Louis's claim for abuse of process. Louis, for his part, moves for summary judgment on all of Thomas's remaining claims for relief.

## I. Breach of Contract Claim

In his second claim for relief, Thomas alleges that he and his father entered into an oral contract in which Thomas agreed to forgive the outstanding promissory note in exchange for Louis (1) reinstating Thomas in his will, and (2) maintaining a life insurance policy and making Thomas a beneficiary thereof. Both parties request summary judgment in their favor on this claim.

### a. Contract to Make a Will

Under Colorado's succession statute,

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after July 1, 1995, may be established only by (i) provisions of a will stating material provisions of the contract, (ii) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract, or (iii) a writing signed by the decedent evidencing the contract.

Colo. Rev. Stat. § 15-11-514. The last prong allows for a contract to be created outside of the will and without the will making any mention it.

In a November 11, 2019 letter from Louis to his estate planning attorney, which Louis produced during discovery,[4] Louis stated that he told his son Arthur "to convey to his brother that if Thomas wanted to be put back in the will, he needed to forgive the note and he would share equally with the other 9 children in whatever estate was available upon my death." Dkt. #49-5. Louis confirmed that "[s]ome time after that Thomas did in fact send the promissory note to me with forgiven written on it." *Id.* This letter likely satisfies § 15-11-514's requirement that evidence of the agreement be memorialized in writing.

---

[4] The background of this disclosure was addressed in the Court's November 12, 2020 Order on Discovery Dispute Relating to Alleged Inadvertent Disclosure of Privileged Communications. (Dkt. #32.)

This does not mean that Thomas is entitled to summary judgment on his claim, however. First, there is the matter of Thomas's curious letter that he sent to his father along with the forgiven notes, which called the notes "worthless" and indicated that forgiveness of them was voluntary ("I will accept your charity on this matter on my behalf."). Under these circumstances, it is not clear what the parties' understanding was as to their agreement. They can testify to that and other issues, but it cannot be resolved at the summary judgment stage.

Second, Louis argues that Thomas cannot enforce the purported to contract to make a will because Louis is still alive. In support of this position, Louis cites *Oles v. Wilson*, 57 Colo. 246, 141 P. 489 (1914), where, over a hundred years ago, the Colorado Supreme Court stated that it is "elementary" that a valid contract to leave property by a will can "be specifically enforced *after the promisor's death.*" 141 P. at 494 (1914) (emphasis added). However, the court did not say explicitly state the inverse— that such a contract could *not* be enforced *before* the promisor's death. Louis also cites *Tarr v. Hicks*, 155 Colo. 159, 393 P.2d 557 (1964), for the proposition that there is no breach of contract to make a will until the death of the promisor. However, when the Colorado Supreme Court stated, "that until the death of [testatrix], there was no breach by her of said agreement and that action was brought in apt time," 393 P.2d at 562, it was merely reciting the trial court's findings of fact and conclusions of law. This determination was relevant for the trial court because the parties there argued about the statute of limitations; it was not an issue on appeal. Accordingly, the Court agrees with Thomas that this statement is, at best, dicta.

Thus, contrary to Louis's contention, it is not clearly settled law in Colorado that the promisor must die before the promise to make a will can be enforced. That does appear to be the law in most other jurisdictions, however. For example, in California, a contract to make a will cannot be enforced during the promisor's lifetime because "a court cannot compel a person to make a will, and a person has the raw power to amend to revoke a will prior to death, even though contrary to agreement." *In re Marriage of Edwards*, 38 Cal. App. 4th 456, 460, 45 Cal. Rptr. 2d 138, 141 (1995). Essentially, "[b]ecause the promisor has all of his lifetime to comply with the agreement, ordinarily no breach occurs until death, at which time a cause of action first accrues." *Id.*

Thomas appears to concede that the "extra-jurisdictional cases suggest . . . that no action may lie for breach of a contract to devise during the promisor's lifetime" (Dkt. #51 at 4), but he cites several courts that he claims have all expressly held that a contract to devise is actionable during the life of the promisor. Louis distinguishes these decisions as involving either a devise of a specific piece of property or a claim for repudiation of an alleged contract to make a will.

The general rule seems to be that since no breach of a contract to make a will can be assured as long as the promisor lives, ordinarily no cause of action accrues until his death. There are exceptions to this general rule that apply when, for example, there have been promises about specific property, or the promisor repudiates the agreement. In those cases, the promisee may seek an injunction to restrain the transfer of the specific property, *see, e.g., Osborn v. Hoyt*, 181 Cal. 336, 341, 184 P. 854, 856 (1919); *Eastwood v. Eastwood,* 207 P.2d 393, 399–400 (Ks. 1949); *Battuello v. Battuello*, 75 Cal. Rptr. 2d 548, 550 (Ct. App. 1998); or assert a claim for anticipatory breach of

contract. *See, e.g., Spinks v. Jenkins*, 43 S.E. 2d 586, 586-87 (Ga. Ct. App. 1947); *Carter v. Witherspoon*, 126 So. 388, 389 (Miss. 1930); *Lipe v. Citizens' Bank & Trust Co.*, 178 S.E. 665, 666 (N.C. 1935). But, "[i]f the promise does not involve specific property but rather such property as the promisor owns at the time of death, the property to which the promisee has a claim cannot be identified until death." *In re Marriage of Edwards*, 38 Cal. App. 4th 456, 461.

Here, the writing signed by Louis indicates that, in exchange for Thomas forgiving the notes, Louis promised to ensure that Thomas "would share equally with the other 9 children in whatever estate was available upon my death." Thus, there was no agreement that Thomas was entitled to a specific piece of property to which Thomas can stake a claim or the Court could award a remedy in the form of an injunction or constructive trust. However, Louis's current will leaves his property to his wife, and only if she does not survive him would it go to his children in equal shares. This could arguably be considered a repudiation or anticipatory breach of the parties' agreement. But Thomas does not clearly claim that Louis has repudiated the contract, and it is debatable whether it can be considered anticipatory repudiation because Louis has the rest of his life to rewrite the will in accordance with the contract.

In short, the Court finds that Thomas is not entitled to specific performance of the contract to make a will. That does not end the enquiry, however, because "[o]ther forms of equitable relief, though, are certainly appropriate during the promisor's lifetime." *Clark v. Clark*, 288 N.W.2d 1, 11 (Minn. 1979). Rescission is an equitable remedy that returns the opposite party to the position he in was prior to entering into the contract. *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118–19 (Colo. 1995). It is

within the trial court's sound discretion to determine the method for accomplishing a return to the *status quo ante* based upon the facts as determined by the trier of fact. *Id.*

In this case, Thomas has presented some evidence that Louis has not abided by the spirit of the agreement or intends not to comply in the future with his obligations. Specifically, it took Louis until 2018 to include Thomas in his estate plan, and even then, Thomas's interest is only a contingent one. Thus, the Court could, after the bench trial, decide to impose equitable remedies to protect Thomas's valid property interests, whatever they turn out to be, and it could do so in the manner requested by Thomas: recission of the contract. Thus, this matter is not ripe for summary judgment.

### b. Promise to Maintain Life Insurance

Thomas asserts that Louis breached an oral promise to maintain and make Thomas a beneficiary of a life insurance policy. Louis claims that Thomas admitted in his deposition that this specific promise was not made. Essentially, Thomas claims there was an agreement (*see* Dkt. #48-2 at 5 ("He [Louis] made promises . . . I [Thomas] would be entitled to a 1/10 share of the life insurance policy, a $5 million policy.")), which Louis denies. The Court finds that there is a genuine issue of material fact regarding this alleged oral agreement that must be resolved at trial.

Moreover, although this issue was not adequately briefed, the fact that this agreement was oral and not evidenced in writing does not appear to affect the claim. Louis seems to argue in his Reply in Support of Motion for Summary Judgment that the alleged promise that Thomas would have a 1/10th share of the life insurance policy is unenforceable because it not memorialized in a signed writing by Louis. (Dkt. #53 at 8–9.) However, this argument is precluded by the admission contained in his Reply in

Support of Motion to Dismiss, where Louis did "not dispute that life insurance policies are non-testamentary[, and] this is why Defendant did not actually argue that Defendant's alleged promise to make Plaintiff a beneficiary to a life insurance policy was precluded by the succession statute[.]" (Dkt. #19 at 8.)

In summary, whether the parties entered into an agreement regarding the life insurance policy must be decided at trial.

## II. Promissory Estoppel/Unjust Enrichment

"A person is unjustly enriched when he benefits as a result of an unfair detriment to another." *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008) (en banc) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000) (en banc)). "The proper remedy upon a finding of unjust enrichment is to restore the harmed party 'to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its monetary equivalent.'" *Id.* at 1141 (quoting Restatement (First) of Restitution § 1, cmt. a). "The scope of the remedy is broad, cutting across both contract and tort law, with its application guided by the underlying principle of avoiding the unjust enrichment of one party at the expense of another." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Lewis*, 189 P.3d at 1141. Unjust enrichment "does not depend on any contract, oral or written," and "does not require any promise or privity between the parties." *Salzman*, 996 P.2d at 1265. Accordingly, "[u]njust enrichment claims require that courts make extensive factual findings to determine whether a party

has been unjustly enriched." *Lewis*, 189 P.3d at 1140. In analyzing the third prong, whether the defendant was unjustly enriched, the Supreme Court of Colorado has "looked to the intentions, expectations, and behavior of the parties to determine whether recovery in unjust enrichment is appropriate." *Id.* at 1143.

Promissory estoppel is a quasi-contractual cause of action that, under certain circumstances, provides a remedy for a party who relied on a promise made by another party, even though the promise was not contained in an enforceable contract. *Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 32, 375 P.3d 1214, 1220–21. "A claim for promissory estoppel consists of four elements: (1) a promise; (2) that the promisor reasonably should have expected would induce action or forbearance by the promisee or a third party; (3) on which the promisee or third party reasonably and detrimentally relied; and (4) that must be enforced in order to prevent injustice." *Id.* Where these elements are present, a promise becomes binding and may be enforced through the normal remedies available under contract law. *Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996).

As noted above and discussed at the hearing, there is a factual dispute as to whether Louis and Thomas entered into an enforceable contract and what the terms of any contract were. Thomas may proceed with his unjust enrichment and promissory estoppel claims in the alternative, because if his breach of contract claim fails, he would have no right under an enforceable contract and may be able to recover for unjust enrichment or promissory estoppel. *See Interbank Invs., LLC v. Eagle River Water & San. Dist.*, 77 P.3d 814, 816 (Colo. App. 2003) (holding that "a party can recover on a

quasi-contract when the party will have no right under an enforceable contract.") (citation and internal quotations omitted).

The same factual disputes that permit Thomas to proceed on both contract and quasi-contract claims precludes entering summary judgment in Thomas's favor under either theory. In essence, Thomas cannot recover on both claims, even if the relief requested is identical. It will be determined at trial whether the parties had an agreement, and, if not, whether Thomas can still recover under an unjust enrichment or promissory estoppel theory.

### III. Abuse of Process

Thomas argues that he is entitled to summary judgment on Louis's abuse of process claim. The Court agrees.

"A valid abuse of process claim must allege (1) an ulterior purpose or the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage." *Active Release Techniques, LLC v. Xtomic, LLC*, 413 P.3d 210, 212 (Colo. App. 2017) (quoting *Mackall v. JP Morgam Chase Bank, N.A.*, 356 P.3d 946, 954 (Colo. App. 2014). There is no valid claim for abuse of process if the defendant's ulterior purpose was simply incidental to the proceeding's proper purpose. *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *aff'd*, 279 P.3d 659 (Colo. 2012). If a party files "claims that are colorable on their face, and requests relief consistent with the claims alleged," there is no abuse of process, even if the claims are factually baseless. *Partmer Worldwide Inc. v. Siliconexpert Techs. Inc.*, No. 09-cv-00586-MSK-MJW, 2010 WL 502718, at *3 (D. Colo. Feb 10,

2010) (footnote omitted); *see also Chaleph v. Canon City*, No. 13-cv-02166-NYW-KLM, 2015 WL 5093200, at *10–11 (D. Colo. Aug. 31, 2015) (no abuse of process if action is confined to regular and legitimate function, even if suit was knowingly brought on an unfounded claim).

The ulterior motive required for an abuse of process claim must be one which seeks a "collateral objective different from what could have been obtained in the lawsuit itself." *Pinon Sun Condo. Assoc., Inc. v. Atain Specialty Ins. Co.*, 2019 WL 140710, at *7 (D. Colo. Jan. 9, 2019), *adopted*, 2019 WL 4667994 (D. Colo. Sept. 25, 2019). "Classic examples of the requisite improper use include the use of process to accomplish a coercive goal which is not the intended legal purpose of the process." *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994). For example, a party engages in abuse of process when he files liens against his adversary, not because the filer claims an interest in the property, but to compel the adversary to concede a child custody proceeding. *Id.* (citing *Scozari v. Barone*, 546 So.2d 750 (Fla. App. 1989)). Other examples of the kind of improper purpose that would support an abuse of process claim include filing a lawsuit against a man's wife in order to obtain a monetary payment from her husband without a valid claim, *Am. Guar. & Liab. Ins. Co. v. King*, 97 P.3d 161, 171 (Colo. App. 2003), or filing a frivolous lawsuit in an inconvenient jurisdiction to obtain consent to transfer software to a third party in violation of a licensing agreement. *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200 (Colo. App. 1998).

Here, Louis argues that Thomas initiated these proceedings to harass and bully Louis into changing his estate plan, and that his lawsuit lacks a reasonable factual and

legal basis. However, discovery unearthed a letter that supports Thomas's claim, labelled by Louis as "fictious" in his Counterclaim, that Louis did indeed promise to reinstate Thomas to his will. Moreover, the fact that Thomas was allegedly upset by his father's actions is not sufficient to establish an ulterior motive; there must some other improper, willful action. As demonstrated in this order and by the Court's denial of Louis's earlier motion to dismiss, Thomas's claims, at the very least, are colorable and will proceed to trial.

Louis also argues that Thomas has used this litigation as a means to obtain Louis's privileged estate planning documents. However, the Court has held hearings on these issues and determined that, in some circumstances, Thomas was entitled to certain estate planning documents. Using the legitimate discovery tools afforded by the Rules of Civil Procedure to pursue valid claims does not constitute abuse of process, even if objections to those discovery requests are occasionally sustained.

Finally, at oral argument, Louis's counsel represented that, because Thomas could not enforce the contract to make a will until Louis died, it necessarily follows that Thomas's suit lacked any proper purpose. As explained above, the Court does not find the authority on this question nearly so cut-and-dry, and, in any event, Thomas was not precluded from seeking other, equitable relief based on Louis's alleged promises.

There are no genuine issues of material fact that Thomas is liable for abuse of process. Accordingly, he is entitled to judgment on Louis's Counterclaim.

## CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Defendant Louis Milton Wyman's ("Louis") Motion for Summary Judgment (Dkt. #48) is **DENIED**, and

Plaintiff Thomas Louis Wyman's Motion for Summary Judgment (Dkt. #49) is

**GRANTED IN PART**, such that Louis Wyman's Counterclaim is **DISMISSED WITH**

**PREJUDICE,** but **DENIED** as to the remaining relief sought.


Date: August 5, 2021

N. Reid Neureiter
United States Magistrate Judge